IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2024 Session

## STATE OF TENNESSEE v. EDWARD HONEYCUTT, JR.

**Appeal from the Criminal Court for Scott County**
**Nos. 10021 & 10184        Zachary R. Walden, Judge**

_____

**No. E2023-00908-CCA-R3-CD**
_____

The Defendant, Edward Honeycutt, Jr., pleaded guilty to one count of initiating the process to manufacture methamphetamine and two counts of child endangerment, in exchange for an effective eight-year sentence, suspended to ten years of probation, after service of sixty-one days in confinement. After multiple violations and revocation hearings, the trial court revoked the Defendant's probation sentence and ordered it into execution, granting "street time" credit from October 25, 2021 to May 6, 2022. The Defendant filed a Rule 36 motion, claiming "clerical mistakes in the judgment orders" related to whether the Defendant's sentence was a probation sentence or a sentence served on community corrections. The Defendant argued that he was entitled to time served in community corrections from September 4, 2012, rather than October 25, 2021, because his sentence was a community corrections sentence. The trial court denied the motion, and the Defendant appeals, maintaining that he has been deprived of time served in community corrections. After review of the record, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Amanda H. Sammons, LaFollette, Tennessee, for the appellant, Edward Honeycutt, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Jared R. Effler, District Attorney General; and Thomas E. Barclay, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Procedural History

On February 21, 2012, the Defendant pleaded guilty to two counts of child endangerment, Class A misdemeanors, and initiating the process to manufacture methamphetamine, a Class B felony (Case No. 10021). The trial court imposed the recommended sentences of eight years for the felony offense and eleven months and twenty-nine days for each of the misdemeanors, to be served consecutively for a total effective sentence of ten years. The trial court ordered a sentence of split confinement with the Defendant serving sixty-one days in jail before being released to a ten-year probation sentence. The plea agreement documents and the judgment forms reflect that the Defendant's probation sentence was to be supervised by the Board of Probation and Parole ("BOPP"), beginning February 21, 2012. A probation order is also included in the record reflecting that the Defendant's probation sentence was to be supervised by BOPP.

On September 4, 2012, the Defendant pleaded guilty to felony evading arrest, a Class D felony, and driving under the influence, a Class A misdemeanor (Case Number 10184). The trial court imposed sentences of three years for the felony evading arrest conviction and eleven months and twenty-nine days for the DUI. The eleven month and twenty-nine day sentence was to be served at 75% and consecutively to case number 10021, for an effective sentence of eleven years for the two cases. As part of his plea agreement, the Defendant agreed to "submit to a first violation in the old – in the 10021," to serve thirty-nine days, receiving "credit from July 27th through today." The trial court stated that, upon release, the Defendant would return to "probation supervised by Community corrections." After confirming the Defendant's understanding of his sentence, the trial court reiterated that the Defendant was "being supervised by Community Corrections." The record reflects the probation revocation order provided:

> The [D]efendant, with his/her attorney and the District Attorney General's Office, agreed in open Court that the [D]efendant had violated the terms of his/her supervised probation and that the sentence be modified as indicated below; the Court finds there is a violation and approves the agreed modification;
>
> . . . .
>
> 39 days of the [eight-year] sentence shall be served in the county jail and the balance of the sentence served on *probation supervised by community corrections* subject to the original conditions. . . . The [D]efendant is entitled to jail credit of <u>7-27-2012 to 09-04-2012.</u>

(italicized emphasis added). The judgments for the offenses in Case Number 10184 reflect the Defendant was sentenced to probation to be supervised by community corrections. A

"Behavior Contract and Conditions of Sentence" for community corrections is included in the record and signed on September 4, 2012, by the trial court judge, the supervising community corrections officer, and the Defendant.

On April 15, 2016, the trial court issued an arrest warrant for the Defendant based upon his failure to report for scheduled office visits pursuant to his supervised sentence and failing to obey all laws by obtaining new charges for possession of drug paraphernalia and possession of a Schedule IV drug on March 17, 2016, in violation of his supervised sentences in Case Numbers 10021 and 10184. On the petition, it states "1st VOP while supervised by Comm. Corr." An order reflects that the trial court held a hearing on May 2, 2016, the trial court found the Defendant in violation of the terms of his probation and it ordered, "[t]he [D]efendant shall serve 40 days in the county jail with jail credit" from April 6, 2016 to May 2, 2016.

On February 22, 2017, the trial court issued another arrest warrant based upon a petition claiming that the Defendant had failed to report to supervision since November 18, 2016, and had failed to pay court-ordered fees/fines in violation of his probation sentence in Case Numbers 10021 and 10184. On April 10, 2017, the trial court held a "violation of probation hearing" about the allegations that the Defendant had failed to pay court-ordered fees and had failed to report. The Defendant's mother was present and made a payment on the Defendant's behalf. The trial court appointed an attorney to represent the Defendant and noted that payment was important but that the trial court was more concerned with the Defendant's failure to report. The trial court inquired about the Defendant's employment. The Defendant's mother indicated that, if released, the Defendant would have employment "in the nature of mechanic work, something about rebuilding an engine." The trial court stated that with proof of employment the trial court would release the Defendant from jail, pending the hearing on the violations, with the requirement that he report weekly to his supervisor. The following exchange occurred about the Defendant's sentence:

Court:              This is [an] 11 year [sentence]?

State:              Yes, your Honor.

Defense Counsel:   But it's not a Corrections sentence?

Court:              It was a sentence that's monitored by Community Corrections but not under their program, meaning he would not have been burning time.

State:              Right.

3

> Probation Officer:   His cases are run consecutive and he's TDOC probation.

After more discussion, the trial court said, "You will be in jail until you provide some proof of your employment." Consistent with the discussion during the hearing, the trial court issued an order requiring incarceration until the Defendant could provide proof of employment, and requiring the Defendant to report weekly to his supervisor, following release.

According to a subsequent order, dated May 22, 2017, the trial court held a hearing on the probation revocation where the parties discussed proof of employment. The documents offered were "less than credible" according to the Defendant's probation officer. The offer of employment was from the Defendant's father. The trial court found the Defendant had violated the terms of his probation and ordered that the Defendant be held in custody until he provided "credible employment." The order reflects the same, "Defendant shall remain in custody until suitable employment. Defendant shall provide pay stubs to probation. Jail credit: 03.21.2017 – 05.22.2017."

On July 24, 2017, the trial court held a hearing and defense counsel summarized the case stating that the hearing was for proof of employment. The trial court stated that it had received "very unconvincing paperwork about employment" from the Defendant's father. The Defendant offered that he now had a "different job" with True Value Homes setting up trailers. The probation officer confirmed that the Defendant's father had "brought in Ms. Byrge who runs a mobile home company setting up mobile homes, and she originally said that she could offer employment." The probation officer requested Ms. Byrge provide documentation. The following day Ms. Byrge called the probation officer, indicating that she no longer intended to extend an offer of employment based on the Defendant's past work history with her company. The trial court again told the Defendant that he needed "credible proof of employment" before he could be released. The trial court issued a July 24, 2017 order repeating, "May be released upon proof of employment." The order also noted jail credit from March 21, 2017 through July 24, 2017.

On September 5, 2017, another probation violation hearing was held. The Defendant's attorney explained that the Defendant was unable to obtain employment while incarcerated, placing him in a "catch 22." The Defendant explained that his cousin could secure a job for him at Highland Steel but the Defendant had to be present at Highland Steel to speak with the employer. The Defendant's attorney asked the trial court to release the Defendant with a "drop dead date" for proof of employment in order to allow the Defendant to seek employment in person. The Defendant offered that, if released, he could reside at his father's house in Oneida while securing employment. The trial court said, "I will approve his release upon a home visit to an address . . . then the job needs to come 30

4

days afterward. In the meantime, he's to be screened liberally." The trial court issued an order on September 5, 2017, stating, "Release after home visit. Must provide proof of employment within thirty days of release. Must be screened."

On April 19, 2021, the trial court issued an arrest warrant based upon a petition to revoke probation in Case No. 10021, alleging that the Defendant had failed to pay the costs associated with the case. On August 16, 2021, the Defendant's probation officer filed a "Violation of Community Corrections" for Case Numbers 10021 and 10184. The affidavit alleged that the Defendant was arrested on August 7, 2021, for possession of Schedule II drugs and a violation of the registration law. The affidavit further alleged that the Defendant admitted on August 9, 2021, to use of "THC, Methamphetamine, Amphetamine, and MDMA without a prescription" and the Defendant still owed $1919.00 in costs and fines. The trial court held a hearing on September 7, 2021, and the parties informed the trial court that the Defendant had "paid the purge payment violation" and had been released from jail. The Defendant had also pleaded guilty to the possession of a Schedule II drug charge, leaving the admission of drug use to be addressed by the trial court. The parties discussed the Defendant's probation status and concluded that the Defendant's sentence had never "made the conversion over" and was supervised by community corrections but not a community correction sentence. After further discussion, the State, noting that the Defendant had been released the day before, requested a drug screen. The trial court ordered a drug screen, which showed Defendant was positive for Methamphetamine and THC. The trial court ordered the Defendant back into custody.

On September 17, 2021, the probation officer filed an amended violation affidavit, adding "the Defendant tested positive for THC and Amphetamines in court after he had been released on bond on 9-5-21." The trial court held a hearing on October 25, 2021, and found the Defendant had violated the terms of his probation sentence. The following exchange occurred with respect to the Defendant's supervision:

| | |
|---|---|
| Court: | I'm afraid this probably was at a time when we were doing that hybrid, that his was probation monitored by Community Corrections, and we've tried to reverse that as we caught it. |
| Defendant: | Yeah, that's what you said last time. |
| State: | He was supervised by Community Corrections. |
| Court: | Have I done that reversal yet? |
| Clerk: | No. |

5

Court:                    Okay.  Let's do that first thing.

State:                    So he's sentenced to Community Corrections?

Court:                    Yes. . . .

After considering the Defendant's failure to report and that he had paid his court costs in full, the trial court placed the Defendant "on Community Corrections" and scheduled a hearing for December to determine the amount of time remaining on his sentence.  The trial court told the Defendant that he did not receive "street time" while on probation but that he would now get "street time for Corrections."  The trial court issued an order reflecting that the Defendant had violated the terms of his probation and that he was to serve seventy-eight days, noting the jail credit.  The order sentenced the Defendant to the community corrections program and scheduled review of the case for December 13, 2021.

On May 6, 2022, the trial court issued a warrant based upon an affidavit alleging that the Defendant had failed to report since February 22, 2022, and violated the requirement that he remain in residential placement by leaving the treatment facility "against Staff's advisement and without completing his treatment."  An amended affidavit was filed May 9, 2022, alleging that, upon arrest, the Defendant tested positive for Methamphetamine, Amphetamine, and THC.  The trial court held a hearing on May 19, 2022, and the Defendant "submit[ted]" to the violation.  A discussion ensued that clarified that the Defendant's sentence began as probation supervised by community corrections but was "converted" to a community corrections sentence on October 25, 2021, and that the current violation was the Defendant's fifth violation.  The trial court found the Defendant in violation of the terms of his probation, revoked the sentence, and remanded the case to the Tennessee Department of Correction for service of the sentence.  The order awarded the Defendant jail credit from May 7, 2022, through May 19, 2022.  The trial court noted in the order "The defendant is entitled to street time of 10.25.21 – 5.6.22."

On May 4, 2023, the Defendant filed a Tennessee Rule of Criminal Procedure 36 motion to correct an alleged clerical error in the judgment.  In the motion, the Defendant contended that the "Probation" box on the judgment form for the 2012 conviction was "erroneously checked" rather than the community corrections box, thereby preventing him from receiving credit toward his sentence.  The judgments attached to the Defendant's motion show that the probation box is checked on the judgment forms for the September 4 convictions for felony evading arrest and DUI.

The trial court held a hearing on the motion on May 22, 2023, wherein the State contended there was no error in the judgments and that the Defendant was not placed on

6

community corrections but supervised by community corrections until October 25, 2021. The Defendant's attorney argued that the Defendant "was under the impression when he entered into this plea in September of 2012 . . . that he was on Community Corrections." The trial court reviewed the record and found that the Defendant was not placed on community corrections until October 25, 2021, and that the Defendant had received credit since that date. The Defendant's attorney insisted that a probation officer told the Defendant in 2012 that he would receive "street credit." To which, the trial court responded:

> The fact that someone was wrong doesn't go to [the Defendant's] benefit. All I can go on is the judgments of the Court. I was not the Judge at that time, so I don't know firsthand what happened. All I can do is review the official Court record, and the official Court record with the signed judgments . . . make it clear that he was on probation but supervised by Community Corrections through most of this time period, but on October 25th of 2021, that is when [the trial court] converted [the Defendant's] sentence to a Community Corrections sentence and from that date forward, he would have gotten street credit.

The trial court denied the Defendant's request to receive time from 2012, but acknowledged that the Defendant was "entitled to sentence credits for the time spent on Community Corrections beginning October 25, 2021, and also for any time actually spent in jail since 12/22/2011."

It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant's argument is primarily based on the "clerical mistake" rule, under Rule 36 of the Tennessee Rules of Criminal Procedure, claiming that there was an error in the judgments. The record, however, does not support his contention.

The ambit of Rule 36 of the Tennessee Rules of Criminal Procedure is the correction of clerical mistakes in judgments, orders, or the record. In considering whether there has been a clerical error, this court has held:

> [T]he record in the case must show that the judgment entered omitted a portion of the judgment of the court or that the judgment was erroneously entered. The most reliable indicator that clerical error was made is the transcript of the hearing or other papers filed in connection with the proceedings which show the judgment was not correctly entered. In the

7

> absence of these supporting facts, a judgment may not be amended under the
> clerical error rule after it has become final.

*Wilkerson v. Carlton*, No. E2007-02453-CCA-R3-HC, 2008 WL 4949227, at *5 (Tenn. Crim. App. Nov. 20, 2008) (quoting *State v. Thomas, Jr.*, No. 03C01-9504-CR-00109, 1995 WL 676396, at *1 (Tenn. Crim. App. Nov. 15, 1995)).  On appeal, the trial court's ruling on a Rule 36 motion is reviewed for an abuse of discretion.  *State v. Webb*, No. E2002-02470-CCA-R3-CD, 2003 WL 21221961, at *5 (Tenn. Crim. App. May 27, 2003).

The record fully supports that the Defendant's sentence was to be supervised by community corrections until October 25, 2021, when the trial court placed the Defendant on community corrections.  The judgment forms for case number 10021 reflect a ten-year probation sentence to be "supervised by BOPP."  In September 2012, the Defendant pleaded guilty in case 10184 and received a three-year sentence suspended to probation and "supervised by community corrections."  The probation box on the judgment forms for case number 10021 and case number 10184 are checked as opposed to the box indicating placement in community corrections.  Moreover, the transcripts from the hearings over the years and the probation violation documents support the conclusion that the Defendant was serving a probation sentence that was supervised by community corrections.  At the October 25, 2021 hearing, the trial court transferred the probation sentence to community corrections and then explained to the Defendant how his time would be calculated differently now that he was serving a community corrections sentence.

On appeal, the Defendant appears to argue that the trial court lacked authority to impose the "hybrid" sentence of probation supervised by community corrections.  He asserts that it is unfair to subject defendants to the more stringent conditions of community corrections without the benefit of earning community correction credit toward a sentence.  While we understand the Defendant's position on this issue, Tennessee Code Annotated, section, 40-36-106(f) states, "Nothing in [section 106] shall prevent a court from permitting an eligible defendant to participate in a community-based alternative to incarceration as a condition of probation in conjunction with a suspended sentence."  Consequently, this court has repeatedly upheld sentences of probation supervised by community corrections.  *See State v. Marcy*, No. M2018-00540-CCA-R3-CD, 2018 WL 5307889, at *3 (Tenn. Crim. App. Oct. 25, 2018), *no perm. app. filed*; *State v. Schurman*, No. M2011-01460-CCA-R3-CD, 2012 WL 1657057, at *2 (Tenn. Crim. App. May 10, 2012), *no perm. app. filed*; *State v. Cole*, No. 02C01-9708-CC-00324, 1998 WL 305375, at *2 (Tenn. Crim. App. June 11, 1998) ), *no perm. app. filed*.

To the extent the Defendant argues the trial court improperly revoked an expired probationary sentence, we conclude that this claim is waived because it was not presented to the trial court.  Tennessee Rule of Appellate Procedure 36(a) instructs this court that it

is not required to grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."

Accordingly, the Defendant has not identified any clerical error in the record. The Defendant asserts that the trial court should have checked the community corrections box on the judgment rather than the probation box but offers no supporting evidence for his claim that the trial court intended to sentence him to community corrections in 2012. The record does not show that something was omitted from the judgment or that the judgment was erroneously entered. To the contrary, the record supports the trial court's denial of the Defendant's Rule 36 motion to correct a clerical mistake. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

Based on the foregoing, we affirm the judgment of the trial court.


_____
ROBERT W. WEDEMEYER, JUDGE